UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2008-219 (WOB)

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, LOCAL 513                                      PLAINTIFF

VS.                     MEMORANDUM OPINION AND ORDER

COMAIR, INC.                                                 DEFENDANT

This matter came before the court on Monday, March 8, 2010, on the parties' cross motions for summary judgment (Doc. #23, #24). William R. Wilder represented the plaintiff, and Norman Quandt and Candace Klein represented the defendant. Official court reporter Joan Averdick recorded the proceedings.

### *Factual and Procedural Background*[1]

This is an action under the Railway Labor Act, 45 U.S.C. §§151, *et seq.*, to vacate the remedy granted in an arbitration award. Defendant has counterclaimed to enforce the remedy granted by the arbitrator.

Plaintiff, International Brotherhood of Teamsters ("IBT") Local 513 ("the Union"), is the local agent of the IBT's Airline Division, which is the certified bargaining representative of certain flight attendants employed by defendant, Comair Inc.

---

[1]These facts are taken from the decision of the Arbitrator, whose findings of fact are binding on this court. *See* 45 U.S.C. § 153(q).

("Comair").

Prior to 2002, Comair freely contacted flight attendants who were on scheduled rest time. Flight attendant dissatisfaction with the interruption of scheduled rest time became an issue on which the Union capitalized during its drive to organize Comair flight attendants.

In 2002, the Union and Comair negotiated their first collective bargaining agreement ("CBA"). Section 23.R of the CBA, titled "Rest Requirements," states:

1. The Company will schedule each Flight Attendant for at least eight (8) continuous hours of rest following a duty period that ends at a location other than her base. If the Flight Attendant's rest requirements will affect the scheduled departure time of the flight the next day Inflight Crew Scheduling or the Captain will establish a new reporting time.

2. Inflight Crew Scheduling will normally notify a Flight Attendant of future assignments while she is on duty.

3. **Scheduled rest will be uninterrupted except as follows:**

   **a. In case of a personal or family emergency; or,**

   **b. To notify a Flight Attendant of a future assignment when a layover is ten (10) hours or less, the Company may only attempt to contact a Flight Attendant up to one (1) hour after block in or one and one-half (1.5) hours prior to the originally scheduled or subsequently scheduled first flight of the day, whichever is earlier.**

(Doc. #24-5 at 23) (emphasis added).

The CBA became effective on July 19, 2002. Thereafter, the Union and Comair had regular implementation meetings. In

2

February 2003, Comair acknowledged at one of these meetings that under Section 23.R of the CBA, it was not permitted to contact a flight attendant who was on a scheduled rest period of more than 10 hours, but the Company stated there were times when it needed to do so.  Comair thus requested that it be permitted to contact flight attendants who were on rest periods of more than 10 hours under the same parameters that the CBA allowed it to contact those attendants who were on rest periods of less than 10 hours.  The Union rejected this request.

However, the parties reached a compromise.  The Union agreed that Comair, prior to the hour of 22:00, could exercise its judgment when to call a flight attendant who was on a rest period of more than 10 hours, and that after 22:00, the Company would contact them only under the same conditions as the CBA set for attendants on rest periods of 10 hours or less.  The Union told Comair that this compromise – which was memorialized in a memorandum of understanding – would continue only so long as there were no complaints from flight attendants about inappropriate contacts during their rest periods.

In 2006, the Union began receiving such complaints.  The parties thus agreed, on August 18, 2006, to modify their compromise to eliminate the Company's permissible exercise of judgment in contacting flight attendants prior to 22:00.

Believing that Comair was not living up to its obligations even under this modification of the parties' compromise, the Union filed grievances on behalf of three Comair flight attendants.  These grievances alleged that Comair violated Section 23.R.3 of the CBA by contacting flight attendants who were on scheduled layovers of more than 10 hours.  The grievances were processed through the contractual grievance process and were denied by Comair at each step.  Comair continued to apply the parties' compromise of August 18, 2006, pursuant to which it contacted flight attendants who were on rest periods exceeding 10 hours under the same parameters as those on rest of less than 10 hours.

Pursuant to the CBA, the dispute was then submitted to the System Board of Adjustment ("the Board"), which is the designated body for the resolution of contractual disputes between airlines and unions.[2]  The Board, comprised of one Union designee, one Company designee, and an impartial Chairman, Lawrence T. Holden, Jr. ("Holden"), held hearings on March 7, 2008 and May 4, 2008 in Hebron, Kentucky.  Both the Union and Comair presented witnesses, and the parties submitted post-hearing briefs.

On November 4, 2008, Chairman Holden issued a Decision and Award sustaining the Union's grievance and holding that Comair violated Section 23.R.3 of the CBA.  (Doc. #24-5 at 42, 52)  The

---

[2]*See* 45 U.S.C. § 153.

Arbitrator concluded that the language of Sec. 23R. was "plain," and that Comair had violated it by contacting flight attendants who were on rest periods of more than 10 hours.  Nonetheless, the Arbitrator awarded the following remedy:

> For remedy flight attendants on scheduled rest of more than ten hours shall be contacted within the same time constraints that apply to flight attendants on scheduled rest of 10 hours or less, and the parties shall follow the negotiation process set forth in the next-to-last paragraph of the decision with respect to the remaining remedial issues outstanding.

(*Id.*)  The Comair designee to the Board concurred in the Award. The Union designee, however, concurred with the finding of a violation of the CBA but dissented from the remedy awarded on the basis that it is outside the Board's jurisdiction and "would rewrite the CBA and eliminate to 10 hour delineation negotiated by Comair and the IBT."

The Union filed this action on November 24, 2008, seeking: (1) a ruling that the remedy awarded by the Board is outside its jurisdiction, and (2) an order remanding the matter to the Board to bring the remedy into compliance with the RLA and CBA.  (Doc. #1)

The parties have filed cross motions for summary judgment, which are fully briefed.  Having had the benefit of the parties' oral arguments, the court now issues the following Memorandum Opinion and Order.

5

*Analysis*

A.  <u>**Standard of Review**</u>

"The decisions of RLA-created adjustment boards are subject to a standard of review that is among the narrowest known to the law." *Airline Prof'l Ass'n of the Int'l Bhd. of Teamsters, Local Union No. 1224, AFL-CIO v. ABX Air, Inc.*, 274 F.3d 1023, 1030 (6th Cir. 2001) (citation omitted). "Overturning the award of a board of adjustment is limited to three specific grounds: 1) failure of the board to comply with the requirements of the RLA; 2) failure of the board to conform, or confine, itself to matters within the scope of its jurisdiction; and 3) fraud or corruption." *Id.* (citing 45 U.S.C. § 153 First (q)) (other citation omitted).

Where an arbitrator's decision fails to draw its essence from the terms of a collective bargaining agreement, the award is beyond the jurisdiction of the arbitrator. *Id.*

"It is well-established that an arbitrator's award is legitimate and must be upheld where it is drawn from the collective bargaining agreement and the issues submitted for determination by the parties." *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411 (6th Cir. 2008) (citing *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "So long 'as an arbitrator is even arguably construing or applying the contract and acting

6

within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001)). Indeed, because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. *Id.* (internal quotations and citation omitted).

Nonetheless, the Supreme Court has made clear that the "arbitrator may not ignore the plain language of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29, 38 (1987). The arbitrator's award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.* "'When the arbitrator's words manifest an infidelity to this obligation,' the scope of the arbitrator's authority has been exceeded and 'courts have no choice but to refuse enforcement of the award.'" *Totes*, 532 F.3d at 411 (quoting *Enter. Wheel & Car Corp.*, 363 U.S. at 597).

The Sixth Circuit, sitting *en banc*, recently revisited the scope of judicial review of labor arbitration disputes. *See Michigan Family Res., Inc. v. Service Employees Int'l Union Local 517M*, 475 F.3d 746 (6th Cir. 2007) (*en banc*). The Sixth Circuit held that arbitration awards should be reviewed only for

7

"procedural aberrations":

> Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

*Id.* at 753. While noting the strong deference due arbitral decisions, the Sixth Circuit further stated:

> **At the same time, we cannot ignore the specter that an arbitration decision could be so "ignor[ant]" of the contract's plain language,** *Misco*, **484 U.S. at 38, 108 S.Ct. 364, as to make implausible any contention that the arbitrator was construing the contract.** An interpretation of a contract thus could be "so untethered to" the terms of the agreement, to borrow a phrase from our Circuit Justice, *Garvey*, 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J., dissenting), that it would cast doubt on whether the arbitrator was engaged in interpretation.

*Id* (emphasis added).

Since *Michigan Family*, the Sixth Circuit has at least twice upheld a district court's *vacatur* of an arbitral award where the arbitrator exceeded the scope of his authority. *See Totes*, 532 F.3d at 414-16; *Peterbilt Motors Co. v. UAW Int'l Union*, 219 Fed. App'x 434, 436-38 (6th Cir. 2007).

In *Peterbilt*, the court held that the district court properly vacated an arbitral award which found that the employer had an obligation under the CBA to pay accident and sickness benefits to a certain employee. The plain language of the CBA,

8

however, placed that obligation on a third-party insurer rather than the employer. *Id.* at 436. While noting the deference due to the arbitrator under *Michigan Family*, the court nonetheless held that the award was properly vacated:

> We are acutely aware of our obligation to defer to the arbitrator's interpretation of the CBA. We find, however, that the arbitrator's interpretation of this contract is both "so 'ignorant' of the contract's 'plain language,'" as to make implausible any contention that the arbitrator was construing the contract" and "'so untethered to' the terms of the agreement" that it does in fact "cast doubt on whether the arbitrator indeed was engaged in interpretation." *Michigan Family Res.* at 753. This is not simply a serious arbitral error that we should hold binding on Peterbilt because serious errors are a risk inherent in arbitration. This is a determination without any basis in the contract that the dispute is one that is subject to the arbitration to which Peterbilt agreed.

*Id.* at 437-38.

Under this authority, the remedy awarded by the arbitrator in this matter cannot stand because it ignores and alters the plain, unambiguous language of the CBA and thus does not draw its essence from that agreement.

It is important to note that the arbitrator found Sec. 23.R.3 to be "rather plain on its face. It makes a blanket statement that rest shall be uninterrupted except in two circumstances." (Doc. 24-5 at 54) The arbitrator then considered the "possibility" that "some latent ambiguity lurks in what appears to be rather plain language," (Doc. 24-6 at 1), but after further review, he concluded that the meaning of the clause in question was plain and that it had been violated by Comair.

9

(Doc. 24-6 at 3)

Indeed, as the Union notes, had the arbitrator concluded that the clause was ambiguous, and that the parties' practice evidenced their intent towards its meaning, he would have found <u>no</u> violation of the CBA at all. That is, Comair would not have violated the agreement if contacting flight attendants on rest periods of more than 10 hours was permissible under Sec. 23.R.3. But the plain language of this clause makes no such exception.

Nonetheless, in fashioning a remedy, Arbitrator Holden detoured into consideration of the parties' past practices and compromise agreements. "[A]n arbitrator or court has no authority to consult extrinsic evidence such as alleged oral agreements . . . of the parties' course of dealing or alleged expectations" where the terms of the CBA are unambiguous. *Dematic Corp. v. Int'l Union, United Auto., Aerospace and Agricultural Implement Workers of A. (UAW)*, 635 F. Supp.2d 662, 677-78 (W.D. Mich. 2009) (citations omitted). *See also Laborers' Pension Trust Fund v. Brick Faced Concrete Walls, Inc.*, No. 07-12859, 2008 WL 1902038, at *8 (E.D. Mich. Apr. 28, 2008) ("However, past practice or custom should not be used to interpret or give meaning to a provision or clause that is clear and unambiguous.") (quoting *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local Number 7*, 114 F.3d 596, 601 (6th Cir. 1997)).

It is an unavoidable conclusion that the remedy awarded here – allowing Comair to contact flight attendants who are on rest periods of more than ten hours on the same terms as those on shorter rest periods – conflicts with the plain and unambiguous language of Sec. 23.R.3, thereby eliminating the 10-hour distinction for which the parties' bargained.

A close reading of the arbitrator's decision reveals that, in fashioning this remedy, he relied on what he perceived as the "impractical consequences that would flow if Sec.23.R.3 were applied strictly in accordance with its plain meaning." (Doc. #24-6 at 3) In so doing, the arbitrator was no longer "even arguably construing the contract" (which he had already found to be plain on its face) but instead he was imposing "his own brand of industrial justice." *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). That is, he imposed on the parties terms which the CBA does not contain. *See Peterbilt*, 219 Fed. App'x at 437 (noting that authority to interpret the parties' contract does not mean that "the arbitrator is free to invent contract provisions").

Even after *Michigan Family*, courts within this Circuit have vacated arbitral awards which altered or ignored plain CBA language. *See Dematic*, 635 F. Supp.2d at 678; *Great Lakes Energy Coop. v. Local 876 Int'l Bhd. of Elec. Workers*, No. 1:07-CV-347, 2008 WL 299022, at *9 (W.D. Mich. Feb. 1, 2008); *Liberty Nursing*

11

*Ctr. of Willard, Inc. v. United Food and Commercial Workers Union Local 911*, 525 F. Supp.2d 933, 937 (N.D. Ohio 2007

This case is similar to *Dematic*, in which the district court vacated an arbitration award because it effectively disregarded the plain language of the CBA. The CBA there provided in clear terms that, in the event of layoffs, the employer would provide certain benefits for only three months. Prior to the negotiation of the CBA and even after it went into effect, the employer sometimes provided benefits to laid-off employees for a longer period of time. The arbitrator held that, despite the language of the CBA, evidence of this practice showed that the parties had "effectively modified" their agreement, and that the employer had violated it by paying benefits for only the three months stated in the CBA. *Id.* at 668-69.

The district court, after reviewing *Michigan Family*, held that the "arbitrator's decision cannot stand." *Id.* at 673. The court stated:

> The [federal arbitration law] does not permit an arbitrator to re-write clear contractual terms because they do not comport with subjective personal notions of fairness or good business. The arbitrator indulged those notions at the expense of fidelity to the parties' fully-integrated written agreement. **The arbitrator may have created the contract she believes the parties *should* have signed; she did not apply and interpret the contract they *did* sign**.

*Id.* (emphasis added; italics in original). The court further held that, because the CBA was unambiguous, the arbitrator

12

exceeded her authority in relying on the employer's practice of paying benefits for more than three months. *Id.* at 674-77. In strong language, the court stated:

> The arbitration award is on no more solid ground if it purports to rely on Dematic's alleged practice of paying benefits beyond three months *since this CBA came into effect* (June 2004). It is true that nothing in the current CBA prohibits Dematic from paying for these types of insurance benefits for more than three months after a voluntary layoff. And it may well be expected that Dematic employees came to hope, or expect, that Dematic would keep doing more than it legally "had to do" for voluntarily laid-off employees. **But such hopes or expectations have no legal significance under the CBA or [federal arbitration] case law. The court discerns no authority for the proposition that by paying more than the CBA required, Dematic somehow effected a non-written amendment to the CBA.**
>
> Put another way, the arbitrator offers no precedent suggesting that Dematic's discretionary accommodation with voluntarily laid-off workers somehow became mandatory under the law. **Extracontractual payments do not acquire the force of contract merely because a judge or arbitrator subjectively finds it "unfair" for a party to exercise its *clear, bargained-for contractual right* to stop paying them. An employer bargains for a temporal limitation on the *duty* to pay post-layoff benefits *precisely so that this situation does not arise*.**

*Id.* at 676-77 (emphasis added; italics in original). *See also Anheuser-Busch, Inc. v. Int'l Bhd. Teamsters*, 280 F.3d 1133, 1144 (7th Cir. 2002) ("The arbitrator attempted to cloak his actions with 'noises' of contract interpretation, but he improperly used the parties' practices to add to the agreement, and his decision reads as though it was deeply rooted in his own personal idea of industrial justice, rather than living up to the very specific language of the contract at issue.").

Thus is it here. In fashioning a remedy for Comair's violation of the CBA, the arbitrator improperly ignored the clear language of Sec. 23.R.3 – that flight attendants on rest periods of more than 10 hours may only be contacted by Comair in the event of an emergency – and instead relied on past practices and his own notion of "impracticality" to impose on the parties' terms not found in the language of the agreement for which they bargained.

The arbitrator's remedy thus does not draw its essence from the CBA and must be vacated.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that:

(1) Defendant's motion for summary judgment (Doc. #23) be, and is hereby, **DENIED**;

(2) Plaintiff's motion for summary judgment (Doc. #24) be, and is hereby, **GRANTED**;

(3) The remedy awarded by the Arbitrator Lawrence Holden on November 2, 2008 be, and is hereby, **VACATED**; and

(4) This matter be, and is hereby, **REMANDED** to the Arbitrator for further proceedings consistent with this Memorandum Opinion and Order.

A separate judgment shall enter concurrently herewith.

This 9th day of March, 2010.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge

TIC: 29 min.